Dean vs. Lammers.

Dean, Appellant, vs. Lammers, Respondent.

*April 30 — June 1, 1885.*

*Sale: Contract for storage: Evidence.*

1. The evidence in this case (stated in the opinion) is *held* to show that the wheat for the value of which, after its destruction by fire, the suit was brought, had been left with the defendant in store and had not been sold to him.

2. It is a matter within the discretion of the trial court whether, after a motion for a nonsuit, it will permit a witness to be recalled and re-examined.

3. The question being whether wheat had been sold to defendant before it was destroyed, the alleged vendor should not be permitted to tes- tify that after such destruction he considered that the defendant ought to pay for it.

APPEAL from the Circuit Court for *Sheboygan* County. The facts sufficiently appear from the opinion.

The cause was submitted for the appellant on the brief

of *George W. Foster*, and for the respondent on that of *Seaman & Williams*. To the point that the facts showed a sale, counsel for the appellant cited *Richardson v. Olmstead*, 74 Ill. 213; Benjamin on Sales, secs. 87, 328; *Bigler v. Hall*, 54 N. Y. 167; *Rahilly v. Wilson*, 3 Dill. 420; *Lonergan v. Stewart*, 55 Ill. 44; *Johnston v. Browne*, 87 Iowa, 200; *Norton v. Woodruff*, 2 N. Y. 155; Hilliard on Sales, 17; *McConnell v. Hughes*, 29 Wis. 537.

ORTON, J. The complaint states substantially the following facts: In the month of February, 1876, one Ellenbacker sold to the defendant about 337 bushels of wheat; one Ternes, about 87 bushels; and one Puetz, about 170 bushels,— and delivered the same to the defendant into his warehouse at Cedar Grove, at a price to be fixed by Ellenbacker, Ternes, and Puetz, respectively, at any time within the following three months, which said wheat, at the time of such sale and delivery, was worth in that market $1.10 per bushel, for which, in the aggregate, judgment is demanded. In about two months thereafter said warehouse was burned, together with the contents thereof. No price of the wheat has ever been fixed by them, because the defendant denied his liability therefor. The defendant advanced to Ellenbacker $35 on his wheat at the time, or soon thereafter. These several claims were sold and assigned to the plaintiff in July, 1881. The defendant answered substantially denying all the allegations of the complaint in respect to the sale of said wheat to him, and alleging that the same was left with him in store in his store-house to be kept by him for said owners, at their risk and without insurance, for a higher market, before a sale thereof. At the close of the plaintiff's evidence, the circuit court granted a nonsuit on the motion of the defendant, and judgment was rendered for the defendant, from which this appeal is taken.

The pleadings sufficiently indicate the real and important question in the case: Was the wheat *sold* to the defendant, or left with him *in store?* Was it a sale or a bailment? When the wheat was delivered at the defendant's storehouse, there was evidently an attempt to have receipts given, but none of them were signed by any one. Blank receipts were filled out by different persons employed about the warehouse, and delivered. Two of them have the printed word "bought" at the beginning erased, and the words "in store" inserted in its place in writing, and the words "no insurance" were written at the top of three of them. These four unsigned receipts, together with a written assignment thereof to the plaintiff attached to each one, were introduced in evidence. They, of course, do not import any written contract between the parties, but they were properly admitted in evidence in connection with the oral testimony of the witnesses. The words "no insurance" written on three of them would seem to imply that the wheat was not sold to the defendant, but left in store only. If the wheat was left in store, it operated as a direction that the defendant need not have it insured, but that it was at the full risk of the owner. If the wheat had been actually sold to the defendant, then it was no concern of these parties whether the defendant should have it insured or not. Of course, the words "in store" on two of the papers afford strong evidence that the wheat was not sold, but so left in the warehouse. Whatever weight these papers have on the question is certainly in favor of the theory that the wheat was left in store.

But we think the testimony of Ellenbacker, Ternes, and Puetz most clearly shows that in each case their wheat was left with the defendant in store, and not purchased by him. Ellenbacker testified as follows: "I delivered the wheat, as set forth in the receipts, at the warehouse of the defendant, at the date of the receipts, receiving $35 on one of the re-

ceipts. . . . The price was not good enough at the date of the receipts. Four days before the fire I received $10 for the wheat, but did not think the price high enough *to sell at that time.* The bargain was that when I brought the wheat, I could ask payment at any time, when I thought the wheat was at a price *I would like to sell at.* First he gave me $25, and then $10. He asked me for a note for the $10, and I gave it. I wanted the money at that time and took $10. *I would not sell then.* I never made any claim of *Lammers* for the wheat." This witness further testified, in answer to a question, in this language: "The talk between *Lammers* and myself before I took the wheat to him was, he said to me: 'You can put your wheat *in store* in my warehouse. I have plenty of room. If you sell to me, I won't charge you any storage. If you sell to anybody else, I will charge you two cents storage.'" To this he added: "But I could sell to no other one because there was no other dealer there."

From this testimony it is very clear that Ellenbacker did not suppose, at the time, or when he testified at the trial, that he had ever sold the wheat to the defendant, or that he had any claim against him therefor. Puetz testified as follows: "I had a talk with *Lammers* before about bringing him my wheat. He said I could put it up there for three months *without storage;* after that I should have to *pay storage.* My opinion was to leave the wheat until the first of April, *and then sell* it. I wanted a place for the wheat, *to be stored for me.* My understanding of it was, *it was stored there.* I never made any claim of him." It is equally clear that Puetz did not understand that he had sold his wheat to the defendant, or had any claim on him for it. Ternes testified as follows: "I had dealings with the defendant in 1876 as to wheat. I hauled wheat to his warehouse, and asked him how much *storage he charged me.* He told me I could have it for two or three months, and he

would not charge storage. The bargain was to get the price at the time I *should sell the wheat*. He told me I could hold it as long as I had a mind to. *I was going to sell in two or three months*. I had never received any pay for it,—*never asked any*." From his frank and candid testimony it is quite certain that Ternes did not suppose that he had sold any wheat to the defendant, or had any claim against him on that account.

It may be well, in this connection, to recur to the testimony of the plaintiff. He testified that he purchased these receipts from these several persons, and then said: "I have written assignments of them. I gave *Lammers* information that I was the owner . . . and demanded payment. I *think* he refused to pay, *thinking*, as he said, that he was not liable for the payment of the wheat. I am an attorney at law, and have been about three years. I was *practicing* law at the time I took the tickets. I got one of Emma Ternes, two of Ellenbacker, and one of John Puetz. I bought the accounts *for a dollar* each, with the understanding that if collected I was to pay one half to the parties, with the exception of Ternes. I agreed to give him $10 for that, and more if successful in collecting."

It was contended on the motion for a nonsuit that this agreement between the plaintiff and these persons was *champertous*, and that such persons were interested in the subject matter of the suit, and should have been made parties. This agreement certainly comes very near the line of champerty, and if it is not strictly champertous it would seem to have accomplished all the mischief of such an agreement, by the institution of such a speculative, harassing, and groundless litigation. It has all the material elements and immoral features of champerty, but technically it may not be champertous, and simply because the action is brought in the name of the person who is to pay its ex-

penses.    It is sufficient, however, for the purposes of this suit that the evidence obtained from these parties themselves shows that they never sold their wheat to the defendant; and it is nearly certain from their evident candor, frankness, and ingenuousness, evinced by their testimony, that they would have never made any claim or brought suit against the defendant on account of the wheat.    It is the plaintiff alone who is urging this claim at this late day by virtue of written assignments of these blank receipts. There was no proof that this wheat was not kept separate in the store-house for each of these persons; or that it had been sold by the defendant, or shipped away; or that it was not in the store-house where it was burned up; or that the fire occurred through any fault of the defendant.    According to the elementary doctrine of sales, and to all respectable authorities, and all the authorities cited by the learned counsel for the appellant, this was no sale.

This case is much stronger than *Seymour v. Brown*, 19 Johns. 44; *Slaughter v. Green*, 1 Rand. (Va.), 3; *Ledyard v. Hibbard*, 48 Mich. 421; *Erwin v. Clark*, 13 Mich. 10; or *Irons v. Kentner*, 51 Iowa, 88,—as a mere deposit of the wheat in the defendant's store-house or bailment, and it would be idle to cite authorities upon so plain a case.

There are some special exceptions in the record, but they are not urged in the appellant's brief.    The last exception is to the denial by the court of the request to call back and re-examine the witness Ellenbacker.    This was purely in the discretion of the court, especially after the motion for a nonsuit.    The question rejected, " Was anything said about insurance at the time you left the wheat?" was leading; and if allowed, might have contradicted the written entry upon the unsigned receipts; but, in view of the testimony of the same witness, it was quite immaterial.    The question, " Did you consider that he ought to pay for it [the wheat]?"

was answered by the witness Puetz, "I did." This answer was stricken out, and very properly, because a mere opinion. There appears to be no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.