WILKE, Respondent, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 11—December 6, 1932.*

620

For the appellant there was a brief by *Shaw, Muskat & Paulsen,* attorneys, and *F. H. Prosser* of counsel, all of Milwaukee, and oral argument by *Mr. Prosser.*

For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

WICKHEM, J. Defendant's first contention is that there is no evidence of negligence on the part of the defendant.

This contention requires a consideration in some detail of the facts.

Upon the road where the accident occurred defendant maintains a double set of tracks, and was engaged in repairing these tracks. As an incident to this repair the workmen, at the time of the accident, were in the act of moving a crossover switch. This crossover switch was sixty-five or seventy feet long and weighed about six tons. It consisted of ordinary street-car rails and was so designed that it could be imposed upon the rails to make a temporary switch during the pendency of track repairs. The highway was concrete to the east of the tracks, the strip of concrete being from thirteen to fifteen feet in width. The portion of the road occupied by the tracks was not paved. At the time of the accident the tracks were barricaded, and a car with three red lights was standing on the northbound tracks about one-half block south of the accident. A utility car was on the southbound tracks. This car was equipped with a crane and a derrick. This derrick was at the north end of the crane and the boom of the derrick extended to the southeast on the northbound tracks. The crossover switch was suspended below the boom alongside the east side of the utility crane. It was fastened by chains, which held the switch about six feet below the tip of the boom and four or five feet above the pavement. There was a row of red lanterns on the ground on the west edge of the strip of paving. There were electric lights on the derrick and in the cab of the utility car, but none upon the crossover switch itself. The lanterns were about twenty feet apart and twenty-four inches east of the east rail. There were also a few red lanterns at the east curb, entirely off the street. The utility car and crossover switch were standing still at the time of the collision. As plaintiff drove north along the row of red lanterns, he saw the utility car with lights on the

derrick, and defendant's workmen working along the easterly rail. His automobile struck the northeast point or corner of the crossover switch, the point of impact being at the upper left-hand corner of the windshield, about four or five feet above the ground.

Under all the circumstances we think a jury question was presented, both of negligence and contributory negligence. There is evidence from which a jury could find that at the time of the accident the left side of the automobile was a distance of from three and one-half to five feet east of the east rail. Hence the switch must have been from three and one-half to five feet within the traveled portion of the highway. This being so, it clearly constituted an obstruction and the jury were entitled to conclude that a discharge of defendant's duty of due care required that it be equipped with warning lights, or that there be some other form of warning effective to protect northbound traffic. The evidence clearly warranted the jury in finding that this duty was not discharged.

We further conclude that plaintiff cannot be held guilty of contributory negligence as a matter of law. The obstruction in this case consisted of an ordinary street-car rail suspended in the air at about the height of the visor above plaintiff's windshield. It was not a large object, and the accident occurred at night. The switch was unlighted, and there was nothing to attract plaintiff's attention to it. Furthermore, a jury could conclude that plaintiff's attention and lookout would naturally be directed by the red lanterns to the ground, and that he might fail to see this obstruction without being guilty of negligence. It is true that defendant had warning that the street railway company's right of way was being repaired, but the jury was entitled to believe that the plaintiff had no notice that the pathway at the right of the tracks was in any way obstructed. Reliance is had upon the case of *Shawano County v. Froemming Bros.* 186

Wis. 491, 202 N. W. 186. In that case a truck driver dis-. regarded a barrier across the highway, which, however, did not completely close the highway. After passing the barrier the driver ran into an excavation and was killed. This court held that the opening in the barrier could not be construed as an invitation to the public to travel upon the highway past the barrier, and that the positive and absolute warning conveyed by the barrier, with the red lantern and sign, brought home to the plaintiff that there was danger ahead and that ·it was his duty to ascertain what such danger was before proceeding, and to have his vehicle under such control that this danger might be averted.

This case has no application here. There is no claim that the street was barricaded. Only the railway right of way was shut off, and the only intelligence or notice conveyed to the plaintiff was that the right of way was under repair. The row of red lanterns along the left side of the track indicated the apparent scope of the railroad's activities, and there was nothing in the situation to indicate to plaintiff that he was in any danger so long as he stayed on the concrete and away from the lanterns. Accepting, as we must, plaintiff's story that he was driving at a moderate rate of speed; that he slowed down to twelve to fifteen miles an hour, and that he was watching the road and the red lanterns, the question of his negligence was for the jury.

Defendant also relies upon the doctrine of *Lauson v. Fond du Lac,* 141 Wis. 57, 123 N. W. 629. We think this case is also distinguishable. We think there is a very material difference between the situation presented by this crossover switch, suspended to a height of about five feet, unlighted, and having no visible connection with the highway, with lanterns on the ground diverting plaintiff's observation away from it, and that presented in the *Lauson Case,* where plaintiff collided with a barrier consisting of a board attached to posts set in the highway. In the *Lauson Case* the

barrier was in the normal line of vision of the plaintiff. There was nothing to divert his attention, and he was maintaining a speed which made it impossible for him to stop within the distance that he could plainly see objects or obstructions.

The contention that sec. 85.15, Stats., requiring the operator of a slow-moving vehicle to drive as closely as practical to the right-hand edge or curb of the roadway, was violated by the plaintiff, and that this constitutes contributory negligence as a matter of law, is without merit. The statute has no application to the situation presented by this case. It relates to highways of sufficient width so that two lines of traffic in the same direction could be maintained, and its purpose is to keep the slow traffic to the right, and allow the faster traffic to maintain a maximum permitted speed at the same time. This was not such a highway, particularly under all the conditions existing at the time of the accident.

The further claim is made that the damages were excessive. Plaintiff's sole injury was a cut on the left eyeball, resulting in a total disability of two weeks and a partial disability of three or four months. This entailed a loss of $220 in wages, medical expense of $110, and damage to the automobile of $50. There was no permanent disfigurement, and the vision of the eye which was cut is approximately ninety-six per cent. of normal. There is no evidence that the four per cent. impairment was caused by the injury. There is evidence, however, that while the vision of the left eye is nearly normal, the tension of the eye is not normal. Plaintiff testified to his inability to read for any length of time without his vision blurring. There is evidence that this condition is permanent. Under these circumstances it is our conclusion that the damages are extremely moderate. If the damages were to rest upon mere impairment of vision, it might seriously be questioned whether they were sustainable, but the type of impairment that does exist is serious, and

the jury was entitled to believe it permanent. Under these circumstances a materially larger award would have to be sustained.

There is some evidence that plaintiff was suffering from a goiter, and some claim that this was made toxic by the accident, but it is not contended by the plaintiff that any substantial case was made on this point. We do not think there is any evidence of a causal connection between the injury and the goiter. The defendant claims that since the jury made no separate assessment of damages, it must be supposed that the jury awarded some damages for aggravation of the goiter, or at least that it cannot be said that they did not do so. However, it is our conclusion that the very moderate sum assessed as damages indicates that the jury could not have included any damages incident to a toxic goiter.

Defendant contends that the court erred in another respect. The jury returned a sealed verdict into court, but upon being polled it was discovered that there was a lack of unanimity of at least ten jurors. The jury was thereafter sent out a second time, and a subsequent poll indicated lack of unanimity. It is contended that the court, in disregard of sec. 270.23, ordered the jury to again return to its room for further deliberation. This section provides that when a jury shall return without having agreed upon a verdict, they may be sent out again for further deliberation, but that if they return a second time without having agreed, they shall not be sent out again without their consent, unless they shall ask from the court some further explanation of the law. The trial court's statement disposes of this objection. The statute does not apply because in both of these cases the jury did bring in a verdict, and difficulty arose because negative answers were made to the various subdivisions of the sixth question, while an affirmative answer upon the poll was required to support such negative answers in the verdict.

This resulted in a misunderstanding upon the part of one juror as to how to evidence his assent to the verdict, and created the appearance of a disagreement when in fact there was none.

It is further claimed that the court erred in refusing to reopen the case to permit further testimony. One of defendant's witnesses testified on cross-examination that plaintiff's car was four or five feet east of the east rail of the track. Defendant claims that its attorney was conferring with another witness at the time and did not hear this testimony. When the testimony was brought to counsel's attention, counsel requested that the case be reopened to permit him to recall the witness, stating that he was convinced from previous conversation with the witness that the latter had testified erroneously, and that the witness had stated to him that he did not understand the question. The court declined the request. The evidence was closed, and it was within the court's discretion to permit or to deny a request to reopen the case for further testimony. *Dean v. Lammers,* 63 Wis. 331, 23 N. W. 892; *Riha v. Pelnar,* 86 Wis. 408, 57 N. W. 51; *Barlass v. Kargus,* 111 Wis. 611, 87 N. W. 800; *Robinson v. Oconto,* 154 Wis. 64, 142 N. W. 125. We think there was no abuse of discretion here. The witness was asked:

"*Q.* At the time of the impact between the crossover and the automobile, how far east of the east rail was the left side of his car? *A. From the rail you mean?*

"*Q.* Yes. *A.* About four or five feet."

It appears from the record that the court could reasonably come to the conclusion that there was no likelihood of a misunderstanding on the part of this witness.

A review of the record disclosing no prejudicial error, it follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.