Shawano County, Appellant, vs. Froemming Brothers, Inc., and others, Respondents.

*January 14—April 7, 1925.*

*Highways: Closing to travel during construction: Barriers: Presumption: Contributory negligence.*

1. That part of a public highway where excavating is being done may lawfully be withdrawn from public use, and one traveling thereon does so at his peril. p. 497.

2. A truck driver who was killed by the overturning of his truck in an excavation in a public highway was contributorily negligent as a matter of law where the evidence showed that he was directed to follow two trucks that preceded him, that he knew that the highway had been withdrawn from public traffic, and that the trucks preceding him, on approaching a barrier across a highway warning of the excavation, turned off the highway, while the truck driver continued past the barrier until he reached the excavation. p. 497.

3. The fact that an opening had been left in the barrier, permitting passage through one side, could not be construed as an invitation to the general public to travel on the highway in face of the positive and absolute warning conveyed by the barrier itself with a red lantern and a sign thereon.   p. 498.

4. The warning conveyed by the barrier removed the presumption that would otherwise apply that the highway was, in accordance with law, reasonably safe for public travel.   p. 498.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge.   *Affirmed.*

May 13, 1922, at about 8:10 p. m., one John F. Glawe, then fifty years old and employed by the plaintiff county as an auto truck driver, met instant death by the overturning of the truck in an excavation across the public highway near Barton, Washington county.   Compensation was claimed against the plaintiff county by his widow, an award was made and paid, and this action was brought by the county as statutory assignee of all claims for liability that such widow might have had against persons responsible for such death and under due resolution by the county board.

In the fall of 1921 the county of Washington planned a change to avoid a heavy hill in highway 55 and to lay a concrete surface on the highway from West Bend north to the county line and running through the village of Barton.   A preliminary contract was made with the defendant *Fred C. Schultz* to do certain excavating and filling on the changed part of the highway.   In the doing of this work he excavated to the depth of nine to eleven feet diagonally across highway 55 as it had theretofore been used and at a point where it was proposed to abandon the same and to connect it up with the change in its line, using the material so excavated for the necessary filling on the part changed.   Shortly prior to May 8th, at which time *Schultz* abandoned all work on his part under said contract and removed his tools, the county, through its county highway commissioner and other officials, entered into a contract with the defendants *Froemming Brothers,* a corporation, for the doing of all the neces-

sary excavating, filling, grading, and concreting the surface of said highway as so changed.

Upon obtaining said contract *Froemming Brothers* sublet the excavating and grading work thereunder to the defendant *August Schroeder, Jr.,* who, prior to the accident, entered upon the performance of such work with his steam shovel at a point some 200 feet south of the place of the accident.

The contractor was required to place the necessary and proper barriers and notices to the traveling public of the withdrawal of the portions of the highway under construction work, and they in turn directed the defendant *Schroeder* to perform that duty and he undertook to do so. For some days prior to the accident in question a barrier with notice and warning had been erected across highway 55 at West Bend at the southerly end of the proposed work. About a mile to the north of that barrier and at the other end of the portion of the highway then under construction a barrier was erected across what was known as Main street, running southwesterly as traveled and laid out in the plat of said village of Barton. At that point the barrier was erected by the use of two-by-six planks sixteen feet long resting on a wooden horse about the center. On the barrier was a sign reading "Keep off. Road closed. Froemming Brothers, Contractors, Milwaukee." A lighted red lantern was hung there, and at about the center of the road some feet above the ground, on the night in question and prior to the accident. One side of the barrier had been left open at the request of and for the convenience of persons living between that point and the excavation above mentioned.

There was dispute as to the width of this opening so left and as to the extent that one of the planks at that end had been broken off before the accident, and the testimony varies as to the width left from eight to seventeen feet. Between such barrier and the aforesaid excavation there was a good wide macadam roadbed with quite a sharp turn to the south

after leaving the so-called Main street.   There was no other sign or barrier between the one at Main street above described until within a short distance of the excavation, where a wooden tripod six feet high was placed on the west half of the highway but with no lantern thereon.

On the day in question the county commissioner of plaintiff county with the deceased and other employees of the county drove from the State Fair Park at Milwaukee north on highway 55 with three large automobile trucks that had been then purchased by and were intended for road work in the plaintiff county.   They reached West Bend around 6 o'clock in the evening and were then informed of the withdrawal of the portion of highway 55 there running substantially due north, between West Bend and the village of Barton.

They then turned squarely to the east from highway 55 in order to detour to Barton.   In leaving West Bend one Zieber drove the first truck, the deceased John Glawe the next, and one Zahn the last, and they continued in this order around the long detour until they reached Main street in Barton.   While on this detour and as darkness was approaching, sunset being at 7:10 p. m., the three trucks stopped at a farm house and obtained kerosene with which they filled the kerosene lamps attached to each side of the dash-boards of the respective trucks and then lighted such lamps.

Upon reaching Main street Zieber and Zahn stopped their trucks and Zieber inquired as to the route to be followed to continue on highway 55 to the north, Glawe in the meantime driving his truck ahead and stopping.   Zieber was informed to turn to the right at the fire department house on Main street, which was located at the southeast intersection of Main street and the newly laid out portion of highway 55 (also there barricaded), and at which point the travel turned to the northwest to continue onto highway 55, and at which.

point the barrier was placed.  Zieber and Zahn then proceeded, and as Zieber passed Glawe told him to follow them, and the first two proceeded about forty or fifty feet apart, saw the sign and barrier at Main street, made the turn, and proceeded on a short distance to the northwest.  Glawe followed, but instead of turning, as did the other trucks, proceeded on through the opening on the side of the barrier as described above and continued on around the turn and down the hill south towards the excavation.  From the marks on the road a short distance before reaching the tripod, which stood at a distance estimated from eleven to twenty-five feet from the excavation, he apparently put on the brakes and swerved his car to the left or east side of the road, but the car continued on and plunged over the embankment.  Zieber, on stopping his car after making the turn, noticed that Glawe had mistaken the course and had proceeded in a direction which was opposite to the one they were to take, left his truck and ran after Glawe in an attempt to stop him, but failed.  A man and a boy, who were between the barrier and the excavation at the time Glawe turned, also attempted to give warning to Glawe but without avail.

There was testimony given that under the arrangement of the auto truck a speed exceeding eight miles an hour could not be had, and that going at that rate of speed it could be stopped within a very short distance.

On the trial a special verdict was submitted to the jury, and as answered is as follows:

(1) Did defendant *Schroeder* do any of the excavating before May 12th? (the day preceding the accident).  No.

(2) Did defendant *Schultz* make the excavation as it existed?  Yes.

(3) Did defendant *Schroeder* fail to exercise ordinary care in putting up and maintaining barriers and warnings. Yes.

(4) Was such failure a proximate cause of the injury? No.

(5) Was the failure in leaving the excavation unguarded a proximate cause? Yes.

(6) Was deceased, John F. Glawe, guilty of want of ordinary care which contributed proximately to the injury. Yes.

(7) Damages were assessed at $4,900.

The usual motions after verdict were made by the respective parties and thereafter the court directed judgment dismissing the complaint, and from such the plaintiff appeals.

For the appellant there were briefs by *R. H. Fischer,* district attorney of Shawano county, and *Eberlein & Larson* of Shawano, of counsel, and oral argument by *M. G. Eberlein.*

For the respondent *Froemming Brothers* there were briefs by *Henry J. Bendinger* and *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* and *Kenneth P. Grubb,* of counsel, all of Milwaukee, and oral argument by *Mr. Doe* and *Mr. Grubb.*

For the respondent *Schultz* there was a brief by *Henry P. Schmidt* of West Bend, and oral argument by *H. S. Sloan* of Milwaukee.

For the respondent *Schroeder* there was a brief by *Walter F. Mayer* and *James E. Coleman,* attorneys, both of Milwaukee, and *Winter & Winter* of Shawano, of counsel, and oral argument by *Mr. Mayer.*

The following opinion was filed February 10, 1925:

ESCHWEILER, J. Numerous objections to the proceedings on the trial are presented, including the *voir dire,* admission and rejection of evidence, and instructions, and very fully and ably argued by appellant's counsel. In view, however, of the conclusions we are forced to reach in this case, it will not be necessary to discuss or pass upon them.

Giving the testimony in this record the most favorable construction possible for the plaintiff, nevertheless we are

compelled to say that as a matter of law the act of the deceased, John F. Glawe, in disregarding the barrier and notice that the highway was closed to public travel and of the possible existence of danger thereon, was such contributory negligence as defeats any right of action to recover damages for any negligence by defendants.

That the portion of the public highway where the excavation was made might lawfully be withdrawn from public use and one traveling thereon does so at his peril cannot well be questioned. *Ashton v. P. F. Coughlin Co.* 179 Wis. 307, 309, 191 N. W. 561. There was also express statutory authority for so withdrawing it under then sub. 7, sec. 1317$m$—6, now sub. (6), sec. 82.04 (first appearing as sec. 6, ch. 668, Laws 1913), giving the county highway commissioner power to stop travel on any highway in process of construction or repair by posting notices forbidding such travel at each end of such highway, and providing that any person violating such order shall be liable to a fine not exceeding $100. The power thereby granted to the county commissioner is substantially the same, though with a lesser penalty for its violation, than that given by the law relied upon by respondents in the court below and here, viz. sec. 1326$o$ as it then stood, now sec. 81.10, but which gave such power to town boards only and therefore not applicable here, though subsequently, and by ch. 446 of the Laws of 1923, creating sec. 81.09, Stats., a power such as that given to the town board by said sec. 81.10 was expressly granted to the county highway commissioner as to county roads.

That Glawe knew that highway 55 for some distance north of West Bend was withdrawn from public traffic is beyond dispute. He knew of such fact by reason of being compelled to follow the long detour out from West Bend up to Barton. He must have known of the necessity for obtaining and following proper directions as to the course to be pursued in leaving Barton by the stopping there for

inquiry.   He was instructed by Zieber, who had made the specific necessary inquiries in that regard, that he, Glawe, was to follow the two trucks.   There is no dispute but that the red lantern on the barrier and the sign were visible to and noticed by the two truck drivers in advance as they proceeded down Main street after passing Glawe and as they approached the fire department house where the turn was to be made.   There can be no escape from the conclusion, in view of these circumstances, that it was the duty of Glawe for his self-protection, in the exercise of ordinary care, both to notice and observe the direction in which those who had assumed the duty towards themselves and towards him of ascertaining the direction to take to heed and pay attention to the direction which they took, and in approaching the barrier with the red light to have seen the same and been warned thereby.   At that point it was his duty to learn which was the proper way.   That an opening had been left and could be seen permitting passage through one side of the barrier cannot be construed as an invitation to the general public to travel thereon in the face of the positive and absolute warning conveyed by the barrier itself with the red lantern and the sign thereon.   When Glawe went by the barrier as he did he was bound to know that it was a warning of possible danger ahead on the highway, and it was his duty, for his own protection in the exercise of reasonable and ordinary care, to ascertain what such danger was before proceeding, or, if proceeding, to so have his vehicle under control that dangers might be averted.   Such warning did away with the presumption that would otherwise apply that the highway was, in accordance with law, reasonably safe for public use.   *Hanson v. Clinton,* 156 Wis. 147, 151, 145 N. W. 646.

We feel compelled to hold under our former decisions such as *Lawson v. Fond du Lac,* 141 Wis. 57, 61, 123 N. W. 629, and *Raymond v. Sauk Co.* 167 Wis. 125, 128, 166

N. W. 29, and cases therein cited, that the judgment direct-
ing dismissal of the complaint upon the merits was correct
and must be affirmed.

*By the Court.*—Judgment affirmed.

Owen, J., dissents.

A motion for a rehearing was denied, with $25 costs,
on April 7, 1925.