## CITY OF CLARKSVILLE v. E. W. DEASON.

Middle Section. November 24, 1928.

Petition for Certiorari denied by Supreme Court, April 13, 1929.

R. A. Gardner, of Clarksville, for plaintiff in error.
Gholson & Stout, of Clarksville, for defendant in error.

DeWITT, J. On June 8, 1925 the plaintiff below E. W. Deason sustained personal injuries from stepping upon an iron grating and falling into a coal hole or entrance to a coal cellar upon the collapse of the grating, due to defective condition from decay of a wooden frame upon which the grating rested as it was set into a concrete pavement. The grating was thirty-two inches long and twenty-four inches wide consisting of two parts coming together in the middle. It was about four to six inches from the front wall of the Bailey building on Second street, and was entirely on the land of the owner of the building. It was covered with strips of sheet iron to make a smooth surface for pedestrians to walk upon. The property is in the business district of the city. In 1915 the owner was ordered by the municipal authorities to construct a concrete sidewalk and curbing to same along and adjacent to the front of her property fifty feet long and eight feet wide, according to specifications given in the notice, but no requirement was made that she construct any pavement from the inner line of the sidewalk to the wall of her building; nor was she requested to place any coal hole or grating on her property. No specifications were given as to material or construction of such coal hole or grating. However, by contract with one Manning she caused the pavement to be laid from the outer line of the sidewalk or curb to the front wall of her building with the coal hole and grating on her property, and the whole pavement thus constructed was thereafter treated by her and by the public as a public way. The distance from the building to the curb was about eleven feet. The city engineer was aware of and approved the type of construction used in the sidewalk, saw it con-

structed, knew of the coal hole and knew that the grating rested on the wooden support. He knew that in the course of time the wood would become rotten from the rains and dampness of the cellar and be unsafe to support the grating. No inspection of the grating and wooden support was ever made by any representative of the municipality after they were placed there. However, at no time was any defect in the wooden support apparent from above, and the municipality had no actual notice of such weakness of the wooden frame due to decay.

When the plaintiff stepped upon the grating it was raining and he was walking close to the wall. He was not aware of the unsafe condition and he was not a trespasser because the owner of the property had left the whole pavement open for pedestrians.

This action was instituted by the plaintiff to recover damages from the City of Clarksville for the injuries thus sustained, upon the theory that they were the direct result of the negligence of the city in permitting the grating to remain in the sidewalk, resting only on the wooden plank for such length of time that the plank became rotten and weakened and not support enough to support the grating and a pedestrian stepping thereon; that the condition of the grating and the support upon which it rested was well known to the defendant or could and should have been known by it by the exercise of ordinary care; that the property owner had dedicated the space for a sidewalk and this dedication had been accepted by user, that the municipality was bound to keep that space in a reasonably safe condition for use, and had violated that obligation or duty. The plaintiff's theory was and is that while using the sidewalk he had the right, in the absence of knowledge to the contrary, to act on the assumption that the sidewalk, throughout its entire width, was in a reasonably safe condition for travel. The defendant entered a plea of not guilty. The cause was tried before the Circuit Judge to a jury, who rendered a verdict in favor of plaintiff for $1100. Motions for peremptory instructions, made by the city at the close of plaintiff's evidence and then at the close of all the evidence were overruled. Motion for new trial was overruled. The defendant city appealed in the nature of a writ of error and has assigned errors.

The assignments that there is no evidence to support the verdict and judgment and that the trial judge erred in refusing to direct a verdict for the defendant will be treated together. There is little conflict in the evidence, except as to the nature and extent of the injuries suffered by the plaintiff. In this connection we will deal also with the insistence that the trial judge erred in refusing to give in instruction to the jury upon request the following:

"If you find that the opening in the sidewalk and the grating over same were outside the limits of the city and upon private property and that the city did not require the sidewalk to be constructed beyond the limits of the street, then the duty of inspection was upon the property owner and not upon the city."

The liability of the city depends upon actionable negligence, not upon absolute warranty of safe condition. The city is not liable if it owed no duty to protect a traveler from danger upon private property adjacent to that part of the sidewalk in which the city had a proprietary interest. The city neither built this part of the sidewalk nor repaired it, nor assumed control over it. It knew of it and permitted the public to travel over it. There are many cases holding that where a city holds out a sidewalk as a part of the public highway, though merely adjacent to it but continuous with it, and permits and impliedly sanctions its use for the purposes of travel, the city is liable for personal injuries sustained from a defect in such sidewalk if it knew of the defect or could have ascertained it by the exercise of reasonable and ordinary care. Deland v. Cameron, 112 Mo. App., 704, 87 S. W., 597; Chicago v. Baker, 195 Ill., 54, 62 N. E., 892; Moore v. Mansfield, 124 Ill., 133, 16 N. E., 246; Hogan v. Chicago, 168 Ill., 558, 48 N. E., 210; Earl v. Cedar Rapids, 126 Iowa, 361, 102 N. W., 140; Foxworthy v. Hastings, 25 Neb,. 133, 41 N. W., 132; O'Malley v. Lexington, 99 Mo. Apps., 695, 74 S. W., 890; Jewhurst v. Syracuse, 108 N. Y., 303, 15 N. E., 409; Chadron v. Glover, 43 Neb., 732, 62 N. W., 62; Caston v. Rock Hill, 107 S. C., 124, 92 S. E., 191; Whitly v. Oshkosh, 106 Wis., 87, 81 N. W., 992; Leggett v. Watertown, 66 N. Y. S., 910; O'Neil v. West Branch, 81 Mich., 544, 45 N. W., 1023; 43 C. J., 990; 52 L. R. A. (N. S.), 773, n. —; 20 L. R. A. (N. S.), 569, n. —.

These cases are based upon an implied recognition by the city of the whole of the walk as a public thoroughfare, the city having knowledge of such general and long continued use by the public and making no objection thereto, the law casting upon the municipal corporation the duty to keep the whole of the sidewalk in reasonably safe condition for use. The rule of these cases would therefore impose upon the municipal corporation the same duty as that which it owes to travelers upon the adjacent highway. For a violation of that duty in failing to repair, or in neglecting or permitting obstructions, or in maintaining, or permittng dangerous places, in streets or sidewalks, the city is liable. Fleming v. Memphis, 126 Tenn., 331, 148 S. W., 1057, citing prior cases; Park City v. Owens, 7 Hig. (Tenn. C. C. A.), 359; Elrod v. Franklin, 140 Tenn., 228, 204 S. W., 298. In such case the question of notice is concluded if the defect was structural and the city constructed the sidewalk

or accepted it after it was constructed by others—the city being then charged with notice from the beginning. 43 C. J., 1043; Poole v. Jackson, 93 Tenn., 62, 23 S. W., 57; Park City v. Owens, Elrod v. Franklin, supra.

In another line of cases a municipal corporation is held to be exempt from liability for injuries from a defect in a part of a sidewalk outside of the line of the highway, although such line is not marked. 29 C. J., 684; Downing v. Coatesville, 214 Pa., 291; Lorenzo v. Wirth, 170 Mass., 596, 49 N. E., 1010, 40 L. R. A., 347; Damon v. Boston, 149 Mass., 147, 21 N. E., 235; Stone v. Attleborough, 140 Mass., 328, 4 N. E., 570; Stockwell v. Fitchburg, 110 Mass., 305; Knowlton v. Pittsfield, 62 N. H., 535. In each case the city did not construct nor repair nor adopt the outside pavement as a part of the public sidewalk. The theory of these decisions is that the city's duty to the public is confined to that property in which the city has a proprietary interest.

In Niblett v. Nashville, 12 Heisk., 684, liability of the city was sustained for injuries to the plaintiff from stumbling into an excavation on the margin of an alley, on private property, because the excavation was a nuisance, an obvious danger permitted by the city. The court said:

"A party bound to keep a highway in repair and open for the passage of the public in a city by night or by day, certainly cannot be held to perform that duty by simply keeping the area of the highway free, while along its edge there is a well or excavation uninclosed, into which the passenger, by an inadvertent step or an accidental stumble, might fall at any time.

"Such an excavation might be all the more dangerous by being immediately on the side of an alley or street rather than in it, as in the latter case it would be notorious as dangerous, and would be shunned by all; while in the former case no such attention might be directed to it, and the unsuspecting passenger, by a mere accidental step, would be liable to be precipitated into it and thus seriously injured."

In the instant case the danger was not obvious. The grating had remained for ten years without falling in so far as the record shows. But this court is of the opinion that the duty of the municipal corporation should not be restricted to the limit of the sidewalk ordered by it where at the time of construction and thereafter it knew that the public was invited to use, and did use, the whole pavement with no mark distinguishing private from public property. As said by the Court of Appeals of Missouri in Deland v. Cameron, supra, "It is absurd to expect people traveling upon sidewalks to advise themselves respecting property limits, and to keep upon one side of an imaginary line if they would remain under the

protecting care of the municipality. Plaintiff had the right to walk upon any part of the sidewalk provided and to assume that defendant was keeping it in a reasonably safe condition for such use."

The view that because the city did not build nor order to be built, nor repair, that part of the sidewalk, although it knew of the construction, the character of support of the grating, and of the permission to the public to use, is too narrow, for it ignores the general duty of the city to afford reasonable protection to travelers whom it has permitted to assume that the property so used is public property.

There is abundant evidence that the covering of the coal hole was, with the knowledge of the city's engineer, constructed of unsafe material. It is not sufficient to say that the wooden support should have lasted at least twenty years. The fact is that after ten years it became rotten and broke down. Such construction is no longer used on regular city pavements. Although it had knowledge of the material used, the city made no subsequent inspection of it. It was a structural defect of which the city is chargeable with notice, having permitted it to be relied on as safe by the traveling public. A knowledge of the action of the elements on structures of wood, and of the liability of wood to decay under certain conditions, is to be attributed to municipalities just as to natural persons. 43 C. J., 1042, 1055; 13 R. C. L., pp. 278-279; Poole v. Jackson: Park City v. Owens, supra.

Thus, the controlling proposition is that as the hole in the pavement was constructed, with the knowledge of the city, in such manner as would, and did, render the walk unsafe and dangerous for ordinary travel, and no inspection was thereafter made, the city is liable just as if the hole were within the line of the sidewalk which was originally ordered. This rule must be applied although the city by ordinance required the abutting owner to keep the sidewalk in repair. This question of primary duty is not material in view of the city's knowledge of defect in the original construction. Under such circumstances the duty of the city to inspect and see that defects were remedied would be primary and not secondary to the duty of the abutting owner, so far as the traveling public is concerned. 13 R. C. L., 349, 356; 43 C. J., 980; White's Negligence of Municipal Corporations, sec. 462; Sherwin v. Aurora, 257 Ill., 458, 100 N. E., 938, 43 L. R. A. (N. S.), 1116; Nesbitt v. City of Greeneville, 69 Miss., 22, 30 A. S. R., 523.

The correctness of a portion of the charge to the jury is challenged on the ground that it was ambiguous, indefinite in meaning, tending to confuse the minds of the jury and to impress them with the idea that the city owed the duty of frequent inspection. The instructions thus complained of are as follows:

"As I have charged you, Gentlemen of the Jury, it is the duty of the city to use ordinary care to see that its pavements are safe and to make such inspection of the pavement as is necessary for that purpose, and if there is any defect which can be seen by ordinary observation, that is, that is open and patent, then the city must see and know of such defect, and repair it in a reasonable time, or else it is liable for any injury occasioned by such defect in the pavement, but if the defect is hidden so that it cannot be ascertained except by removing a grating, or other part of the pavement, the city is not bound to remove a grating, and look at a base, unless by reason of the manner or material used in the construction of the base or grating and of the conditions surrounding it, or the passage of time, or other circumstances in regard to the grating, its construction and material, a reasonably prudent man would have anticipated that the grating was unsafe, and would endanger those who might step on it in walking on the pavement; then there would be no duty on the part of the city to remove the grating and look at the base, and there would be no liability on the part of the city and the plaintiff cannot recover.

"In other words, Gentlemen, the issue resolves itself down to this: Has the plaintiff shown by a preponderance of the evidence, that by reason of the way in which the grating was constructed upon a wooden base, and the liability of such a base to rot and become weakened from dampness and other causes, and the long time it had been installed, the defendant city was negligent in not examining the base and ascertaining that it was rotten, and that the grating was unsafe. If the plaintiff has shown this by a preponderance of the evidence, and that by reason of this negligence the city did not keep this grating safe, and the unsafe condition of the grating caused the injury to the plaintiff, then the city is liable and your verdict will be for the plaintiff.

"But, if the plaintiff has failed to show, by a preponderance of the evidence, that the manner and material used in constructing this grating, and the conditions surrounding it, were such as made it negligence on the part of the city not to inspect the base of this grating, to see whether or not it was sound and sufficient to hold up the grating, then the plaintiff cannot recover, and your verdict will be for the defendant, and also it must appear that the negligence of the defendant was the proximate cause of the injury, before the plaintiff in this case can recover."

The first complaint is that it was erroneous to say, "it is the duty of the city to use ordinary care to see that its pavements are

safe, and to make such inspection of the pavement as is necessary for that purpose.'' It is true that the only requirement of a city is that ordinary care be exercised to keep the sidewalks in a reasonably safe condition; but the trial judge had already instructed the jury as follows:

''It was the duty of the city to maintain this sidewalk in such repair as that it would be 'reasonably' safe for the plaintiff to walk upon it, and this duty applied to every part of the sidewalk which was open to the public for travel, whether within or without the property line of the adjacent property owner, including that part of it which consisted of a grating over a coal hole in the sidewalk, and, when a person passing over the sidewalk, in the exercise of ordinary care, is injured on account of any defect, or the unsafe condition of the sidewalk, the city is liable to him for such damages as he may sustain, if the city had notice of the defect or unsafe condition of the sidewalk, or if it should have known of the defect and would have known of it, had it done its duty; that is, if it had exercised ordinary care as to the safety of the sidewalk.

''The city is not an insurer of the safety of persons walking upon its sidewalks, that is, it does not absolutely guarantee that the sidewalk is safe to pedestrians, and it is not liable unless it did, in fact, know of the defect, and allowed it to remain, or unless it ought to have known of the defect, and through its negligence, did not know of it.''

Thus, the jury were instructed that it was the duty of the city to maintain the sidewalk in such repair that it would be reasonably safe; and that it was the duty of the city to use ordinary care to see that its pavements are safe. ''Safe'' could only mean reasonably safe, in these instructions, especially when considered with the instruction that the city is not an insurer of the safety of persons walking upon its sidewalks. These instructions were therefore not ambiguous, nor was the remainder of the charge complained of confusing or erroneous.

In three other assignments it is urged that certain instructions offered were erroneously refused. Two of them contained the propositions that the fact that a sidewalk or grate over an opening therein was built of material that might or does become defective or unsafe from wear and decay does not make it a defective construction; and that if it should be found that the grate where the plaintiff was injured was safe when it was originally put in and afterwards became out of repair, the city could not be held liable for the plaintiff's injury, unless the jury should find that the city had notice of the defect. Such instruction would omit consideration of the duty of the city to make reasonable inspection when it

knew that the wooden base under the grating would inevitably become unsafe and that the public was using the whole pavement as a public thoroughfare. Under such circumstances there is no requirement of actual notice of the defect or danger as a condition of liability. The same proposition as to the requirement of actual notice was embodied in the other request refused by the trial judge; and it was built upon the proposition that the duty of constructing and maintaining the sidewalk was upon the property owner; in other words, because this was her duty, and the construction was made safe at the time, the city would not be liable unless the defective condition, if any, of the sidewalk or grating was open and notorious so as to arrest the attention of the passer by, or the city had actual notice of such defective condition for a reasonable time before the accident, for in that case the duty of inspection would be upon the property owner and not upon the city.

As heretofore shown, the traveler upon that pavement could not be affected by any primary duty to inspect and maintain it imposed upon the property owner by the municipality. The city knew of and permitted the use of the walk by the traveling public without distinction as to the line separating the proprietary interests. The duty to see that sidewalks are kept in a reasonably safe condition involves, of course, the duty to make reasonable inspection of them; and the city cannot evade this duty to the public by seeking to delegate it to the abutting property owner.

The witness Hunt, who from long experience had full knowledge of the character of construction of the grating and wood work and concrete, and who repaired it after the accident, was allowed over objection to testify that in his judgment that method of construction was not a proper and safe method. This matter was not the subject of common knowledge and understanding and could be made the subject of expert testimony. 22 C. J., 647 and cases there cited. The qualification of this witness as an expert was a matter largely within the determination of the trial court as a matter of discretion; and as this witness had some expert knowledge there was in our opinion no abuse of discretion. The admission of this testimony is therefore not the subject of review in this court. Roper v. Memphis Street Railway Co., 136 Tenn., 23, 188 S. W., 588; McElroy v. State, 146 Tenn., 442, 242 S. W., 883.

The insistence that the judgment should be reversed because it was based on a gambling verdict cannot be sustained. It appears from testimony adduced upon the hearing of the motion for a new trial that first, the jury voted in proper form that a verdict should be rendered for the plaintiff; that without any agreement to be bound by it each juror wrote down and handed to the foreman the amount which he favored awarding to the plaintiff; that the aver-

age of these amounts was ascertained to be $1060; that one juror insisted on awarding $1250 and announced that he would never agree to as little as $1000; that thereupon the jury agreed upon a verdict of $1100. It appears also that when each juror wrote down an amount he announced it to the other jurors. Inasmuch as there was no antecedent agreement to abide by the result, and after the quotient was ascertained there was a discussion and deliberate agreement upon the amount, the conduct of the jury was not such as would vitiate the verdict. Railway & Light Co. v. Rogers, 5 Hig., 218; Ferguson v. Moore, 98 Tenn., 341, 39 S. W., 341; Railroad v. Winters, 85 Tenn., 248, 1 S. W., 790; Williams v. State, 15 Lea, 129; Glidewell v. State, 15 Lea, 133; Memphis v. Pilleaux, 9 Heisk., 248; Johnson v. Jerry 2 Humph., 567; Harvey v. Jones, 3 Humph., 56.

It does not appear from the evidence that the verdict of the jury was influenced by prejudice, caprice, passion or other improper influence. In the absence of such showing the question of the amount to be awarded is for the jury and will not be reviewed by the appellate court. Tennessee Coal, etc., Co. v. Roddy, 85 Tenn., 400, 5 S. W., 286; American Lead Pencil Co. v. Davis, 108 Tenn., 251, 66 S. W., 1129; Packet Co. v. Hobbs, 105 Tenn., 30, 58 S. W., 278.

When the grating gave way and the plaintiff fell into the coal hole his left leg was bruised and skinned from his ankle to the knee on both sides. A short time thereafter a knot developed below the knee which grew larger for several months and did not disappear until late in the year 1927. His right leg was also bruised. He suffered an injury to his back which continued until the time of the trial, rendering him unable to work. His physician testified that the muscles of his back were tender and enlarged and that in his opinion the plaintiff was permanently injured. He suffered considerable pain and inconvenience and loss of earning capacity, besides expense for medical services. The plaintiff was a painter and carpenter doing work by contract and for sometime after the injury he could not use his right foot and could not climb up and down a ladder as was necessary in his occupation. Prior to the injury he was in good health and able to perform his regular duties as painter and carpenter. In our opinion this constitutes sufficient evidence to justify the conclusion that the jury acted within its power as composed of reasonable men, and this court should not attempt to substitute any judgment which it may have for that of the jury. The law prescribes no exact standard by which the compensation to be awarded for such injuries shall be measured. "Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation." 8 R. C. L., 673; Saucier v. Roberts, 2 Tenn. Apps., 211.

From these conclusions it results that none of the assignments of error are well taken and they are all overruled. The judgment of the circuit court is affirmed., Judgment will be entered in this court in favor of the defendant in error against the plaintiff in error for the amount of the judgment in the circuit court, with interest from the date thereof. The costs of the appeal will be adjudged against the city of Clarksville and the sureties on its appeal bond.

Faw, P. J., and Crownover, J., concur.