CITY OF KNOXVILLE v. BAKER. No. 2.—150 S. W. (2d) 224.

Eastern Section. December 14, 1940.

Petition for Certiorari Denied by Supreme Court, April 5, 1941.

Frantz, McConnell & Seymour and Hartman, Lockwood & Carson, all of Knoxville, for plaintiff in error.

Donaldson, Montgomery & Baugh, of Knoxville, for defendant in error.

McAMIS, J.   Plaintiff below, Billie D. Baker, aged seven years, suing by next friend, instituted this suit against the City of Knoxville to recover for alleged personal injuries sustained as the result of plaintiff tripping over a water cutoff located from eighteen inches to twenty-one inches from the edge of the sidewalk along North Central Avenue.

At the conclusion of plaintiff's proof in chief, the City of Knoxville moved the court for a directed verdict in its favor.   This motion was overruled.   The City declined to introduce any proof and the case was submitted to the jury with the result that a verdict for $1,000 was returned.   Its motion for a new trial having been overruled, the City has appealed in error to this court, assigning as the first ground for reversal the action of the trial court in overruling its motion for a directed verdict.

There is little, if any, dispute in the evidence.   On January 14, 1939, between the hours of 8 and 9 P. M., plaintiff was returning home with his two older brothers.   The three boys had been walking north on North Central Avenue on a sidewalk five or six feet in width maintained by the defendant.   Shortly before reaching 1300 North Central Avenue, two other pedestrians came between plaintiff and his two brothers, and plaintiff, in order to catch up, left the

sidewalk and went upon the premises of one Creech located at 1300 North Central Avenue.

There is evidence that a City street light was located seventy-three feet from the water cutoff located on the Creech premises but, from the evidence most favorable to plaintiff, it appears that the cutoff was not visible in the darkness caused by the shadow of a tree intervening between it and the street light. Plaintiff tripped over the handle, which consisted of a steel rod about one-half inch in diameter extending eighteen inches above ground with a handle about six inches in length parallel to the ground. The City official in charge of the Water Department testified that when the water was turned on the handle was supposed to point away from the sidewalk and toward the Creech house and that when the water was turned off the handle was supposed to be parallel with the sidewalk. We, therefore, assume that, at the time in question, the handle was pointing either toward the Creech house or was parallel with the sidewalk.

It appears without dispute that the cutoff was installed during the year 1910 by the City for a fee of $10 which was charged to the property owner. It appears that the cutoff in question was for the exclusive benefit of the property owner, the City having its meter and cutoff located between the sidewalk and street curb. The proof is undisputed that since the installation of the cutoff the City has not assumed any right of control over it and has made no repairs upon it.

It is the theory of the declaration that the City was guilty of a nuisance in thus permitting an obstruction to exist near the sidewalk in the position shown even though located without the boundaries of the street and sidewalk and upon private property. On behalf of the City it is contended that its duty of keeping the street and sidewalk clear of obstructions extended only to the limits of the street "as made and used;" that it was under no duty to go upon private premises and remove the water cutoff or erect a barrier along the side of the walk to prevent persons from straying off the sidewalk and into a place of danger.

The rule in this State, as stated at an early date, is as follows:

"We think the true rule may be stated to be, that if an obstruction or excavation be permitted which renders the alley, street, or highway, unsafe or dangerous to persons or vehicles—whether it lie immediately in or on the alley, street, or highway, or so near it as to produce the danger to the passer at any time when he shall properly desire to use such highway—it is such a nuisance as renders the corporation liable. . . .

"A party bound to keep a highway in repair and open for the passage of the public in a city by night or by day, certainly cannot be held to perform that duty by simply keeping the area of the highway free, while alone its edge there is a well or excavation uninclosed, into which the passer, *by an inadvertent step or an accidental stumble,*

might fall at any time.'' Niblett v. Nashville, 59 Tenn. (12 Heisk.), 684, 686-689, 27 Am. Rep., 755. (Italics ours.)

In Oliver v. Nashville, 106 Tenn., 273, 61 S. W., 89, the court said that if a traveler intentionally or as a matter of choice or convenience leaves the usual and safe place of travel he cannot hold the city liable if he heedlessly goes into a place of danger. Recovery was denied in that case but evidently more upon the theory of gross contributory negligence upon the part of the injured traveler than upon a holding that the city was under no obligation to maintain in a safe condition the place along the street where the injury occurred.

In City of Clarksville v. Deason, 9 Tenn. App., 274, opinion by Judge DeWitt, Niblett v. Nashville, supra, was cited for the controlling principles involved, and it was held that the duty of the municipal corporation should not be restricted to the limit of the sidewalk where there was no mark distinguishing the edge of the right-of-way from private property, it appearing that the covering over a coal hole located upon private property but used as a part of the sidewalk was constructed of unsafe material and that this condition was known to the city. It was pointed out that the duty of the city, under such circumstances, extends to the point of affording reasonable protection to travelers whom it has permitted to assume that the property so used is public property.

Thus, while it was held in Niblett v. Nashville, supra, that a municipality may be liable for an obstruction or excavation on the margin of an alley to one who stumbles into it in endeavoring to leave the street and approach a house, and, as held in City of Clarksville v. Deason, supra, may be liable for defects in a sidewalk existing upon private property where there is no line of demarcation between the sidewalk and private property and the place where the defect exists has been used for many years as a part of the sidewalk, with the knowledge of the municipality, we do not appear to have any reported case dealing with the liability of a municipality to one who voluntarily, but without contributory negligence, leaves the sidewalk and is injured by an obstruction located upon private property. A clear statement of the general rule is as follows:

''As a general rule, the duty of a municipal or quasi-municipal corporation or of a private individual to guard excavations or other dangerous places or hazards and the resulting liability for failure to do so exists only when such places are substantially adjoining the way, or in such close proximity thereto as to be dangerous, under ordinary circumstances, to travelers thereon who are using ordinary care, or, as it is sometimes stated, where they are so located that a person walking on the highway might, by making a false step or movement, or being affected with a sudden giddiness, or by other accident, come in contact therewith. No definite rule can be laid down as to how far a dangerous place must be from the highway in order

to cease to be in close proximity to it, but the question is a practical one, to be determined with regard to the circumstances of the particular case. In the determination of the question whether a defect or hazard is in such close proximity to the highway as to render traveling upon it unsafe, that proximity must be considered with reference to the highway 'as traveled and used for the public travel,' rather than as located, and the proper test for determining the necessity for a barrier, or liability for injury, is whether the way would be dangerous to a traveler so using it, rather than the distance from it of the dangerous object or place. The mere fact that the space adjoining the highway is unsafe for travel is not enough to impose such liability, and none exists, either on the part of the municipality or of the owner of the premises, if, in order to reach the danger, one must become an intruder or voluntary trespasser on the premises of another. The fact that the injury occurs on the adjoining premises does not necessarily preclude a recovery, however, where the traveler is not a voluntary trespasser. Furthermore, if the traveler is forced to leave the highway in order to pass around an obstruction placed by the landowner, the latter is liable for injury resulting from a dangerous condition on his premises even though the condition was not in such proximity to the highway as to render him liable under ordinary circumstances.'' 25 Am. Jur., p. 814, sec. 531.

It is to be observed that a distinction is recognized between cases where the traveler comes near the obstruction located upon private property as the result of an inadvertence, accident or existing conditions at the time of the injury and cases where the traveler voluntarily and as a matter of convenience leaves the well defined place of travel located upon the right-of-way and passes upon private property where the obstruction is located. As noted in the authority cited, the mere fact that the space adjoining the highway is unsafe for travel is not enough to impose liability.

It has been held that this rule will be applied where the traveler deviates from the highway for ever so short a distance, and becomes a trespasser before he falls. Collins v. Decker, 120 App. Div., 645, 105 N. Y. S., 357, 359. In that case the rule was applied to preclude recovery from the owner of a corner store, by one who, in turning around the corner in the dark, fell into the unguarded entrance of a stairway two feet from the sidewalk. The court appears to have recognized the distinction above noted when it said:

''Plaintiff could not well have fallen into the stairway without first becoming a trespasser on defendant's premises; unconsciously of course, but no less a trespasser because of that fact. If it be conceded that because of the nearness of this stairway to the sidewalk a person could have fallen into the stairway without becoming a trespasser on defendant's property, nevertheless that is not the plaintiff's case. He left the sidewalk for the purpose of shortening his course.''

Presiding Judge Faw, in the course of an exhaustive opinion in Louisville & N. R. R. Co. v. Evins, 13 Tenn. App., 57, cites the case from which we have just quoted and notes that it in turn follows the leading English case of Hardcastle v. Sound Yorkshire Railway Company, 4 Hurl., and Nor., 67. Judge Faw then quotes with approval from the Hardcastle case as follows:

"When an excavation is made adjoining to a public way, so that a person walking upon it might, by making a false step, or being affected with sudden giddiness, or, in the case of a horse or carriage way, might, by the sudden starting of a horse, be thrown into the excavation, it is reasonable that the person making such excavation should be liable for the consequences; but when the excavation is made at some distance from the way, and the person falling into it would be a trespasser upon the defendant's land before he reached it, the case seems to us to be different. We do not see where the liability is to stop. A man getting off a road on a dark night and losing his way may wander to any extent, and if the question be for the jury no one could tell whether he was liable for the consequences of his act upon his own land or not. We think that the proper and true test of legal liability is, whether the excavation be substantially adjoining the way, and it would be very dangerous if it were otherwise—if in every case it was to be left as a fact to the jury, whether the excavation were sufficiently near to the highway to be dangerous."

It is noted that the cases referred to involved the liability of a property owner but we think the principles underlying liability are the same with respect to the duty of a municipality to maintain its streets in a reasonably safe condition for travel.

In the instant case, the proof is undisputed that the City had provided a space adequate for pedestrian travel free from any defects which might endanger pedestrians using the street in the usual and customary manner. The limits of the street and sidewalk were well defined and the obstruction complained of was not so situated as to endanger the safety of persons using the sidewalk in the proper and customary manner. Plaintiff voluntarily left a safe place of travel and went upon private property where he become a trespasser before he was injured and, while because of his youth he is not chargeable with contributory negligence, we think it would place too great a burden upon municipalities to require them to remove all obstructions near sidewalks either within or without the street right-of-way against which pedestrians might collide in the darkness.

As illustrative of the burden which would be cast upon municipalities if the rule were otherwise, reference may be directed to the numerous obstructions appearing from the photograph of the street in question including street markers, fire plugs, highway signs, private advertising posters, and telephone poles, all located as close as the water cutoff in question. All of the obstructions, however, including

the water cutoff extend above the ground and are visible to pedestrians using the sidewalk in the daytime. It may be expected that pedestrians will use some caution in leaving the sidewalk if it is too dark to guard against injury from any obstruction which may be encountered. For this reason we think the case is somewhat less favorable to the injured pedestrian than the cases cited where the defect consisted of an excavation or depression which, in and of themselves, afford no warning of their presence.

The duty of foreseeing injury from defects and obstructions to pedestrians using the street and sidewalk in the usual and customary manner is the extent of the duty imposed by law upon the City. Jackson v. City of Nashville, 17 Tenn. App., 413, 68 S. W. (2d), 137; Batts v. City of Nashville, 22 Tenn. App., 418, 123 S. W. (2d), 1099; Clayborn v. Tennessee Elec. Co., 20 Tenn. App., 574, 101 S. W. (2d) 492 and, for a recent statement of the rule of foreseeable consequences, see Illinois Central Railway Co. et al. v. Nichols, 173 Tenn., 602, 118 S. W. (2d), 213.

The proof shows that it has been the practice of the defendant City for more than twenty years to install cutoffs similar to the one in question near the sidewalk, in some cases nearer than the one in question, and there is no proof that pedestrians have been injured as a result of this practice. We have concluded that the facts failed to justify a submission of the case to the jury and that the City's motion for peremptory instructions should be sustained. It will be ordered.

Portrum and Ailor, JJ., concur.