### BRISCOE et al. v. WORLEY.

No. 35125.   Oct. 28, 1952.

Rehearing Denied Feb. 10, 1953.

*253 P. 2d 145.*

Pierce, Rucker, Mock, Tabor & Duncan, Oklahoma City, for plaintiffs in error.

Busby, Harrell & Trice, Ada, and John B. Ogden, Oklahoma City, for defendant in error.

O'NEAL, J.   This action for damages for alleged wrongful death was brought by Willis C. Worley, administrator of

the estate of Ella Lucille Worley, deceased, against the Standard Paving Company, a corporation, and Jack Briscoe and Frank Briscoe, a copartnership, doing business under the firm name and style of Jack Briscoe, Contractor. The parties herein will be referred to as plaintiff and defendants as they appeared in the trial court, or in the alternative as Mrs. Worley, Standard and Briscoe.

The petition substantially alleges that Standard, under its contract with the State of Oklahoma, constructed a bridge over Briar Creek on U.S. Highway 75, at a point between the towns of Lehigh and Coalgate; and that Briscoe, under his contract with the state, constructed approximately eight miles of concrete road between said named towns.

This work covered a period of approximately a year, and during the construction work the highway between said towns was open to local traffic, school buses and the U.S. mail; that U. S. Highway 75 was the only existing highway between said towns upon which local residents could travel to and from their homes. That Standard erected a temporary bridge across Briar creek and constructed a by-pass around the main highway bridge then under construction, which temporary bridge and by-pass was used by the local residents, as well as by Standard Briscoe under their respective construction work. The Briscoe contract required him to hard surface the highway on each side of the main bridge, as well as the bridge itself, when completed, and it was necessary to maintain a temporary bridge at a by-pass for the proper performance of their contract with the State of Oklahoma.

On the completion of Standard's work, it placed wooden guards on each end of the detour by-pass thus barricading travel therefrom. The traveling public then crossed over the new bridge for approximately a month thereafter, and prior to the accident hereinafter referred to.

Plaintiff pleads certain standard specifications for highway construction adopted by the State Highway Commission of the State of Oklahoma which specifications were published prior to the time the contracts were entered into by Standard and Briscoe, and which specifications are claimed to be a part and parcel of the contracts of Standard and Briscoe. These specifications required the contractor to plan and perform work so that local traffic and the U. S. mail would be hindered as little as possible in the use of the highway, and to this end the contractor was required to provide and maintain a traffic way along the work and crossings. That wherever a contractor is required to construct a temporary crossing over a stream his responsibility for accidents shall include the roadway approaches, as well as the structures of such crossings. Other specifications need not be further noted.

It is alleged that Mrs. Worley, on the evening of March 11, 1950, was driving her automobile on U. S. Highway 75 in a northerly direction and as she approached the new bridge she found it barricaded, and she was compelled to use the by-pass and the temporary bridge provided by the defendants. It is alleged that defendants failed and neglected to maintain the by-pass in a safe condition, free from hazardous obstructions, in that they allowed a stump to remain on the edge of the roadway of the by-pass. This stump was too high to be passed over by an automobile and was covered with coal dust or pulverized cinders, which had been used in the construction of the by-pass; that there was no barricade, warning sign or light near the stump; that as Mrs. Worley was driving her car along the by-pass it collided with the stump and the accident resulted in her instant death; that the death of Mrs. Worley was directly and proximately caused by the careless and negligent acts of the defendants in failing to furnish a suitable by-pass around the bridge and maintain it in a proper condition, free from hazardous obstructions.

The separate answer of Briscoe, after pleading a general denial, alleged that the plaintiff's decedent, Mrs. Worley, was herself negligent, which contributed to the accident and her resulting death; that Mrs. Worley failed to exercise that degree of care which a reasonably prudent person should have exercised under the circumstances; that she drove her car at a speed greater than would permit her to bring it to a stop within the assured clear distance ahead; and drove her car off of the traveled portion of the highway, and off of the highway designated for travel. Furthermore, that the accident was an unavoidable casualty.

After the introduction of plaintiff's evidence in chief, the defendant, Standard, demurred thereto on the ground that plaintiff failed to sustain the allegations of her petition. The demurrer was sustained by the trial court on the ground that plaintiff's evidence disclosed that Standard completed its work under its contract; that the bridge had been accepted by the State Highway Department, and that Standard's liability to maintain the by-pass in a reasonably safe condition for traffic had ceased long prior to Mrs. Worley's accident and injury.

At the close of plaintiff's case, Briscoe also demurred to the evidence on the ground that plaintiff did not establish facts upon which plaintiff was entitled to affirmative relief as against the defendant, Briscoe. This demurrer was overruled. At the close of all the evidence Briscoe moved for a directed verdict, which motion was denied. Upon the verdict of the jury a judgment was rendered in favor of the plaintiff and against the defendant, Briscoe.

No issue is presented as to the reasonableness of the verdict and judgment rendered thereon, but it is urged in Briscoe's motion for a new trial and by assignments of error that the trial court erred in the following particulars:

## I.

Actionable negligence on the part of plaintiffs in error, proximately causing the accident was not shown by the evidence in this case.

## II.

The accident was not a foreseeable consequence of any negligence on the part of the defendants.

## III.

The court erred in admitting for the consideration of the jury, Plaintiff's Exhibit "6", over the objection of defendants, and in making the statement in the presence of the jury that the plaintiff had the right to rely on the contractual liability thus assumed.

## IV.

The court erred in giving to the jury its Instruction No. 12 over the objection and exception of the defendants.

## V.

The court erred in refusing to submit to the jury the Defendants' Requested Instructions, Nos. 2, 3, 4, 5, 6 and 7.

The facts as shown by the record disclose that Standard, under its contract with the State covering the construction of the main bridge over Briar creek, found it necessary to construct the by-pass running from one end of the bridge to the other. This by-pass was approximately 275 feet long. Dirt fills 12 feet high were erected on each end of the by-pass. The fills created ramps leading from the main highway onto the by-pass. The temporary bridge crossing was about 140 feet north of the south ramp. This by-pass running along the creek was constructed over a rough terrain. Slack from the coal mines was used as a filling or ballast over the main part of the traveled by-pass. Along the edge of this by-pass road Standard had cut down a tree approximately 10″ in diameter, leaving a stump 18″ high. This stump was usually covered with a heavy thick-

ness of coal dust, and the stump during dry seasons could not be readily seen by passing motorist. A number of witnesses who traveled over the by-pass had observed the stump and others had not noticed it prior to the accident in question. All witnesses stated that the coal dust during dry spells made their vision difficult if an automobile preceded them. On the evening of March 11, 1950, a coal miner by the name of Lanoy was driving his car toward Coalgate, and as he was about to enter the by-pass on the south end, he observed the headlights of the car some distance behind him. When his car reached the temporary bridge on the by-pass he observed the Worley car coming down the ramp behind him, and shortly afterwards heard a crash. He brought his car to a stop, got out and went back to the Worley car. He observed that the car had run into the tree stump. The car was badly damaged and Mrs. Worley was dead. Mr. Lanoy stated that when he went down the ramp he put his car in second gear and when he approached the temporary bridge he shifted his car into low gear. That this witness was driving slowly and that the Worley car was also driving slowly behind him, is disclosed by the following questions and answers:

"Q. Now, isn't it a fact that this car which was following you, gained on you very substantially, in other words ate up the distance between it and you, as you came to the top of the ramp? .A. No, it couldn't have come to the top of the ramp.

"Q. Did it crowd you going down the ramp? A. No."

The sheriff of Coal county on the night of the accident was traveling south toward Lehigh. He stopped his car on the north end of the by-pass as he had observed two cars entering the by-pass from the south. As these cars did not come out of the by-pass he walked down and found the wrecked Worley car and saw the witness, Lanoy, at the scene of the accident. He stated that he had traveled over the by-pass on numerous occasions for over a year while the bridge was being constructed, but had never observed the tree stump. He further stated that on the night in question there was a strong north wind, and visibility, on account of the coal dust, was very poor.

The evidence is without substantial dispute that during the construction of the main bridge and the hard surfacing of the highway there were times when the barricades at the bridge were removed, and then the local traffic was permitted to cross the bridge. At other times the barricades were placed at each end of the bridge and then traffic passed over the by-pass.

Standard, having completed its construction work upon the bridge, in the latter part of January or early in February, 1951, placed barriers across each end of the by-pass and it was then closed to traffic. Briscoe had not completed the road work, especially with reference to resurfacing the floor of the bridge and approaches to the bridge. Briscoe testified that if they could not use the by-pass they would have to travel a dirt road seventeen miles in length to get from one end of the bridge to the other to complete their paving operations. Briscoe suggested to Standard that Standard leave the ramps in place and at the conclusion of the construction work he would rebuild the shoulders of the ramps and recondition the by-pass as Standard was obligated to do under its agreement with the state. Standard agreed to Briscoe's request and thereafter, under date of January 21, 1950, Briscoe addressed a letter to the State Highway Department, as follows:

"This is to advise that it is satisfactory with us for Standard Paving Company to leave the ramps off the grade on each side of the two bridges on project F-254 (2) and that we will repair them to the satisfaction of the engineer on our project without cost to the state."

The letter agreement referred to was approved by the State Highway Department and the balance due under Standard's contract was paid in full. Briscoe then removed the barricades from the ramp and barricaded the bridge from traffic. He caused the ramps to be regraded, as well as the road over the by-pass. It is disclosed by the evidence and shown by photographs introduced in the record, that the grader approached very near the tree stump at the edge of the by-pass road. Agents of the State Highway Department testified that U. S. Highway 75 at the main bridge was 130 feet wide; therefore, the distance from the center of the highway to the stump was 64 feet, placing the stump within one foot of the outer edge of the highway.

Neither plaintiff nor defendants introduced the contracts in evidence under which they were performing their work. An engineer of the State Highway Department was called by plaintiff who testified that he was familiar with the specifications of the State Highway Department as applied to construction work, and that section 104.06 —Maintenance of Detours, reads:

"The Contractor shall plan and prosecute his work so that local traffic and the U.S. Mail will be hindered as little as possible in the use of the road. To this end the Contractor shall provide and maintain a traffic way along the work and crossings over or around the culverts. Maintaining traffic at bridges will not be required unless specifically provided for on the plans or in the proposals. Unless otherwise stated in the plans or special provisions, through traffic over State or U.S. Highways will be detoured away from the work, under way and marked detour on temporary roads to be maintained by the Commission."

The witness stated that this was a standard specification in force and applicable to all work covering the construction of public roads.

Plaintiff to sustain the verdict and judgment rendered in their favor states:

"There is only one question involved on this appeal, to wit: Is there sufficient evidence to present a jury question?"

Plaintiff asserts that if the local public were permitted to use the by-pass during the joint construction of the bridge and road work, that the plaintiff was not a trespasser, or licensee, but on the contrary was an invitee, and as such it became the duty of the defendants to use reasonable care in the maintenance of the by-pass by keeping it reasonably safe for travel.

Plaintiff calls to our attention cases distinguishing the applicable rule of care as applied to trespasser, licensee and invitee. As we view the present action, the general specifications of the State Highway Department referred to as 104.06—Maintenance of Detours, applies only to the contractural relation between Briscoe and the state, and these general specifications do not increase or diminish the statutory or common-law liability or duty of the defendant as applied to the facts here involved.

In the course of the trial, defendant, Briscoe, objected to the introduction of the Highway Department's specifications. The trial judge referring to plaintiff's petition stated:

"They allege the contractural liability and the statutory and the common-law liability. They have different causes of action. They can rely upon either one or both."

As the trial progressed and as the issues were developed, the court, by its instruction No. 12, submitted the case to the jury solely under the defendants' common-law liability. This instruction reads:

"You are instructed in this case that if you shall find and believe from the evidence and by a fair preponderance thereof that the Standard Paving Company, one of the original defendants in this cause, after completion of the bridge over Briar Creek referred to in the evidence and pleadings herein erected barriers across each end of the detour commonly known as the 'shoo

fly' and opened up the main highway for traffic and should you further find by a fair preponderance of the evidence that thereafter the defendants herein, Jack Briscoe and Frank Briscoe, removed said barriers across each end of the 'shoo fly' or detour and caused barriers to be placed across the main highway thereby causing or permitting the local traffic to use said detour or 'shoo fly', you are then instructed that it was the duty of the defendants, Jack Briscoe and Frank Briscoe, to keep in good order the temporary way of passage for travelers around the obstruction caused by the construction of the bridge and to use that degree of care which an ordinarily prudent person would have exercised in the same or similar circumstances to render the by-pass or 'shoo fly' reasonably safe for use by persons traveling over it; and you are further instructed that if you shall find from a fair preponderance of the evidence that the defendants, Jack Briscoe and Frank Briscoe, their servants and employees, after reopening said detour or 'shoo fly', failed and neglected to keep said detour or 'shoo fly', in good order so as to be reasonably safe for use by persons traveling over it, and that such failure on the part of the defendants, their servants and employees amounted to a want of care which an ordinarily prudent person would have exercised in the same or similar circumstances, and if you shall further find that such lack of care was the proximate cause of the death of Ella Lucille Worley, plaintiff's decedent, then your verdict must be for the plaintiff and against the defendants, Jack Briscoe and Frank Briscoe, and you will fix his recovery at a sum not to exceed $101,000.00 in accordance with the instructions of measure of damages hereafter given you."

We think this instruction fairly submitted to the jury the issue of negligence as applied to the facts in the instant case.

This court has often held that to constitute actionable negligence, where the wrong was not willful or intentional, three essential elements are necessary:

(1) The existence of a duty on the part of the defendant to protect the plaintiff from injury.

(2) Failure of the defendant to perform that duty.

(3) Injury to the plaintiff proximately resulting from such negligence to perform that duty.

The trial court properly overruled defendants' demurrer to plaintiff's evidence as plaintiff's evidence established primary negligence of the defendant.

In the case of Standard Theatres Corp. v. Hughes, 185 Okla. 377, 91 P. 2d 1058, we said:

"The decisions from this court upon this point are consistent in holding the question of negligence or lack of negligence is for the jury to decide, and it is only when the facts are such that reasonable men could draw only one conclusion that the trial court is justified in taking the case from the jury."

The same rule was applied in Mid-Continent Pipe Line Co. v. Price, 203 Okla. 626, 225 P. 2d 176, and Casualty Reciprocal Exchange et al. v. Sutfin, 196 Okla. 567, 166 P. 2d 434.

Briscoe lays great stress upon the fact that the road was a "closed road." He states this fact was undisputed and undenied. Closed road signs were erected both at Lehigh and Coalgate. The fact remains, however, that the road, as well as the bridge and the by-pass, was open to local traffic and was generally used by the public for a period of more than a year prior to the date of the accident. In Toler v. Hawkins, 188 Okla. 58, 105 P. 2d 1041, this court said that a highway contractor in the performance of road work must exercise reasonable care in protecting persons using the way. The liability arises out of a legal duty not to make the highway dangerous for ordinary use under the circumstances, and such liability is founded on tort, and not on contract.

Defendants seek to avoid the legal effect of Toler v. Hawkins, supra, by the assertion that the work performed under the supervision of the State High-

way Department did not necessitate the closing of the road to traffic. The State Highway Department's engineer, assigned to the work, at no time made a suggestion that local traffic be discontinued.

In Toler v. Hawkins, supra, the contractor contended that as his contract with the Highway Department did not impose upon him a duty to maintain the detour, and as the Highway Department permitted the road to remain open to travel, that he was under no legal duty to maintain the road in a safe condition. This contention was not sustained by our decision in the Toler case. The facts in the Toler case in their essential elements are quite similar to the instant case. The principles of law there announced are to the effect that the liability of the contractor is not based upon the contract, but upon tort. This is the theory upon which the court properly submitted the case to the jury under instruction No. 12, supra.

The evidence of Lanoy, referred to above, discloses that Mrs. Worley was driving her car at a reasonable and cautious rate of speed, and that the accident would not have happened but for the unusual and hazardous condition which Briscoe negligently permitted to exist. If it be assumed, as defendants contend, that the court erred in admitting in evidence plaintiff's Exhibit "6," which are the general specifications of the Highway Department, heretofore referred to, the error was harmless, as instruction No. 12 submitted the case solely on the question of tort, and not upon contract.

Complaint is made in the court's refusal to submit to the jury defendants' requested instructions Nos. 2, 3, 4, 5, 6 and 7. We have examined the requested instructions and find no error in the court's refusal to give them to the jury, for the reason that the instructions are tantamount to an instructed verdict for the defendants.

The judgment of the trial court is affirmed.

ARNOLD, C. J., and WELCH, CORN, and DAVISON, JJ., concur. HALLEY, V. C. J., and JOHNSON, J., dissent.

HALLEY, V. C. J. (dissenting). I think the majority opinion is wrong, for the reason that the defendant co-partnership owed no duty to the deceased, the wife of the plaintiff; and further, because there was no negligence on the part of the defendant.

The facts in the case are simple. Standard Paving Company had a contract with the state to construct a bridge over Briar creek, and to assist it in the construction of that bridge had made what is referred to in the record as a "by-pass", "shoo-fly", or "detour" around the bridge and across Briar creek, on the east side of the highway between Coalgate and Lehigh. Standard Paving Company had completed its contract for constructing the bridge and had fenced off at each end the "detour" it had constructed. The defendant had a contract with the state to lay the approaches to the bridge, and wrote a letter to James George, resident engineer for the State Highway Department, stating that it was satisfactory for Standard Paving Company to leave the ramps off the grade on each side of the bridge over Briar creek (and also at another bridge which was included in the project) and that defendant would repair them to the satisfaction of the engineer on the project without cost to the state. The purpose of this was that the defendant wanted to use the "detour" (which was in actuality a service road) in its construction work in laying the approaches to the bridge. Defendant repaired this service road in order to make use of it for its own purposes.

The traveled portion of the service road was eighteen feet wide, and the stump into which the deceased drove her car was six feet from the edge of

the traveled portion of the road and was within one foot of the east edge of the 130-foot right of way which the state had at this point. There was nothing in the contract of the defendant with the state requiring it to construct a detour on Briar creek. Section 104.06 of the Standard Specifications provides that maintaining traffic at bridges will not be required of the contractor unless specifically provided in the plans or proposals, and there is no evidence that any such requirement was made of the contractor in this case; as a matter of fact, it was testified that there was no requirement upon the contractor to maintain traffic at the bridge over Briar creek. The defendant made no effort to prevent the local traffic from using this service road, but the unquestioned testimony shows that it was built for the convenience of the contractor and not for use by the public. The highway was closed at Lehigh and at Coalgate, with detour signs directing traffic to an alternate route. The use by the public of the service road constructed for the convenience of the contractor was at its own peril. No duty rested upon the defendant to furnish a highway around the construction work. The only duty that defendant owed plaintiff's deceased wife was not to willfully and wantonly injure her, and there is no evidence of any such act here. There was no duty on the state, and none on the defendant, to maintain this service road for public travel. In Seelye v. State, 34 N.Y.S. 2d 205, it was held that where claimant for damages from alleged defective condition of gravel shoulder alongside state's right of way did not show the existence of a duty on the state to maintain and repair the shoulder, claimant was not entitled to recover.

Even if it had been the duty of defendant to maintain this service road for public use, there is no negligence shown in the manner in which it was maintained. It was not required to have a smooth road for the complete width of the right of way; this was

a construction job in which defendant was building a paved highway, and naturally a service road around such work, for the use of its construction equipment, was only temporary; and from photographs reproduced in the record and shown in the briefs it is evident that this road was sufficient for the purpose for which it was constructed.

The stump into which the deceased drove her car was six feet from the traveled portion of the service road. The question of whether or not an obstruction near the traveled portion of an improved road can be an actionable defect has not been passed upon in this state, but respectable authority from other states holds that it is not an actionable defect, even though it is on the shoulder or within the right of way. Gilbert v. State, 56 N.Y.S. 2d 232; Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S.W. 2d 54; McChesney v. Dane Company, 171 Wis. 234, 177 N.W. 12; City of Knoxville v. Baker, 25 Tenn. App. 36, 150 S.W. 2d 224.

The majority opinion relies upon Standard Theaters v. Hughes, 185 Okla. 377, 91 P. 2d 1058. That case is not in point here, because there was evidence there of the maintenance of a dangerous condition, i.e., a step or ledge between the seats and the aisle of a theater, and the theater was maintained without sufficient lights, while here there was no negligence, for the reason that the alleged obstruction was beyond the limits of the traveled portion of the road.

The majority opinion also states that the facts in Toler v. Hawkins, 188 Okla. 58, 105 P. 2d 1041, and those in the case at bar are similar, but in the Toler case the defect created by the contractor was in the traveled portion of the highway. They had torn up a concrete road and were allowing the public to travel over the torn-up portion of the highway, and permitted a large hole to be worn in the highway, resulting in an injury to an occupant

of an automobile. The duties and responsibilities of the contractors in that case and in the case at bar are entirely different, in that this service road was not a part of the main highway and there has been shown no duty on the part of the defendant to maintain it for public use.

The defendant has raised a number of propositions which would require reversal of this case if well founded, and I think they are. The record of this case is honeycombed with errors too serious to be dismissed with a wave of the hand, as has been done by the majority opinion.

The majority opinion says that instruction No. 12 given by the trial court was correct. That instruction tells the jury that when defendant removed the barriers across each end of the "detour", and caused barriers to be placed upon the main highway, thereby causing or permitting local traffic to use said "detour", it was the duty of defendant to keep in good order the "temporary way of passage for travelers around the obstruction caused by the construction of the bridge." I submit that this instruction was erroneous in that no such duty rested upon the defendant either by contract, by statute, or by common law.

As previously stated, I think that where a motorist uses a road which has been closed to the public and withdrawn from travel, he does so at his own peril. See Blashfield's Cyclopedia of Automobile Laws and Practice, §3269; Shawano Co. v. Froemming, 86 Wis. 491, 202 N.W. 186.

There has been a miscarriage of justice in this case. I respectfully dissent.