IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 15, 2019 Session

## MARILYN LYNN JAMES v. CITY OF DYERSBURG

**Appeal from the Circuit Court for Dyer County**
**No. 2013-CV-16     R. Lee Moore Jr., Judge**

————————————————————

### No. W2018-00614-COA-R3-CV

————————————————————

This appeal arises from injuries the plaintiff sustained from a fall while descending the exterior sidewalk steps of property owned and managed by the City of Dyersburg. The plaintiff contends she fell because, *inter alia*, the city was negligent in the design and maintenance of the stairway and in failing to correct the defect in the steps. Following a bench trial, the court found the proof failed to establish that there was a dangerous or defective condition that was the proximate cause of the plaintiff's fall, and if there was a defective condition, the City of Dyersburg had no prior notice. The trial court also found that if there was a defective condition, the plaintiff was more than 50% at fault which bars any recovery. For these and other reasons, the trial court dismissed the complaint. This appeal followed. Having determined that the evidence does not preponderate against the trial court's findings of fact, and discerning no error with its conclusions of law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S. and WILLIAM B. ACREE, Senior Judge, joined.

Marilyn Lynn James, Cincinnati, Ohio, Pro Se.

Michael R. Hill, Milan, Tennessee, for the appellee, City of Dyersburg, Tennessee.

### OPINION

On the morning of March 7, 2012, Marilyn Lynn James ("Plaintiff") tripped and fell while walking down the sidewalk steps as she was leaving the building located at 425 West Market Street in Dyersburg, Tennessee, which housed the Dyersburg City Courts and police station. Immediately after her fall, a police officer came to assist Plaintiff and promptly called for an ambulance. Plaintiff was taken to Dyersburg Regional Medical

Center where she was treated and released with a diagnosis of lacerations to her right and left knees, contusions to her right and left ankles, and soreness in her right wrist, left shoulder, and lower back. Plaintiff's left knee required seven stitches and resulted in a one-inch permanent scar. After being discharged from the emergency room that same day, Plaintiff reported the incident to city personnel.

On March 6, 2013, Plaintiff commenced this action by filing a pro se complaint against the City of Dyersburg ("the City"). In an amended complaint, filed on her behalf by attorney Charles Kelly, Plaintiff alleged that her injuries were caused by the negligence of the City "in failing to provide a handrail on the steps, and in failing to correct a defect in the steps[,] being a separation between step and a metal strip[,] and was of dangerous design or in failing to maintain the steps to keep them safe[.]"

In its Answer, the City admitted that it owns and maintains the sidewalk and steps, that Plaintiff fell on its property at approximately 9:25 a.m. on March 7, 2012, and was taken to the hospital. However, the City denied that it or its employees were negligent in any fashion that proximately caused or contributed to Plaintiff's injuries or damages. The City also denied that the steps were in a defective, dangerous or unsafe condition. The City further asserted that the action was governed by the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 to -408 and alleged that Plaintiff was comparatively negligent by failing to maintain a proper lookout and in failing to exercise reasonable care in walking down the steps.

The case was tried without a jury on February 16, 2018[1]. Only two witnesses testified at trial, Plaintiff and Greg Williams, the Purchasing Agent for the City of Dyersburg. Plaintiff testified that as she was leaving the City Court building, she proceeded out the door and began to walk down the steps of the sidewalk in front of the building. Plaintiff stepped down from the top step with her right foot onto the second step, but as she tried to step down with her left foot, the two-inch heel of her left shoe got caught on the metal strip on the stairs, and she started to fall. Due to the alleged negligence of the City, there was no railing on the left side of the stairs, which Plaintiff claimed was against city codes; therefore, Plaintiff did not have anything to grab hold of to keep her from falling, causing her to fall down all four concrete steps at full force. Plaintiff also introduced several photographs of the steps and the metal strips, but there were no measurements taken and no proof offered of any code violations or applicable code requirements for the steps, stairway, or handrails.

Plaintiff testified that the fall caused her severe injuries, pain and suffering, loss of enjoyment of life, anxiety, and physical and emotional distress. She also testified that the

---

[1] Plaintiff's counsel withdrew from the case prior to trial, and thus Plaintiff represented herself pro se at trial and on appeal.

fall aggravated her preexisting condition of rheumatoid arthritis; however, she presented no expert evidence to support these claims or to prove the reasonableness or necessity of the medical expenses she incurred. On cross-examination, the City questioned Plaintiff about medical records which revealed complaints of pain in her knees and ankles prior to the fall due to rheumatoid arthritis. The City also presented medical questionnaires Plaintiff completed prior to the fall that indicated the severity of her knee pain as an "8 out of 10" and a "10 out of 10." The trial court noted that although Plaintiff claimed to have an aggravation of a preexisting condition, she presented no expert medical proof to establish a permanent injury resulting from the fall or that the fall aggravated any preexisting condition.

The trial court also noted that Plaintiff's trial testimony regarding the cause of her fall was somewhat different from her deposition testimony. In Plaintiff's deposition, she said the heel of her shoe got caught between the edge of the concrete step and the metal strip. At trial, she stated her heel dragged across the metal strip, causing her to fall. After viewing the width of the heel on Plaintiff's shoe, the trial court questioned whether the heel could actually get caught between the strip and the concrete. Based on these and other facts, the court stated that Plaintiff had failed to prove "exactly what caused her to fall or where exactly the fall occurred." The trial court also found it significant that Plaintiff chose to walk down the middle of the steps and not use the handrail on the right side of the steps, given her preexisting condition of rheumatoid arthritis.

After correctly ruling that Plaintiff had the burden of proof to establish the existence of an unreasonably dangerous or defective condition, and that the City knew or should have known of the danger before her fall, the trial court found there was no proof of any design defect or failure to properly maintain the steps. The court also found there was no evidence of any prior falls or anyone notifying the City of any alleged defect in the steps prior to Plaintiff's fall. The court additionally found that if there were a defective condition, Plaintiff was guilty of negligence in failing to use the handrail that was available, and her failure to use the existing handrail when she was suffering from rheumatoid arthritis was "serious enough to bar her recovery based on comparative fault."

Based on the foregoing, the trial court dismissed the complaint, and this appeal followed. Both parties raise numerous issues for us to consider. We, however, have determined that the dispositive issues are whether the sidewalk steps that allegedly caused Plaintiff's fall were in a dangerous or defective condition at the time of her fall and, if so, whether the City had actual or constructive notice of the dangerous condition.[2]

_____

[2] One of the issues raised by the City was that the appeal was not timely filed. We have determined the Notice of Appeal was timely filed because it was "placed with a commercial delivery

(continued…)

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 595, 599 (Tenn. Ct. App. 2006).

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. Second, findings and conclusions also serve "to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making." A third function served by the requirement is "to evoke care on the part of the trial judge in ascertaining and applying the facts." Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.

*Lovlace v. Copley*, 418 S.W.3d 1, 34–35 (Tenn. 2013) (internal citations and footnotes omitted). Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

In the case at bar, the trial court made extensive findings of fact and conclusions of law. Accordingly, we are afforded a clear understanding of the basis of the trial court's decision. *Lovlace*, 418 S.W.3d at 34.

---

service [Federal Express], having computer tracking capacity, within the time for filing." *See* Tenn. R. App. P. 20(a).

ANALYSIS

I.    CLAIMS OF NEGLIGENCE UNDER THE GOVERNMENTAL TORT LIABILITY ACT

Plaintiff's cause of action is controlled by the Governmental Tort Liability Act ("the GTLA"), Tennessee Code Annotated §§ 29-20-101 to -408. Due to the doctrine of sovereign immunity, tort claims may not be brought against the State of Tennessee or other governmental entities without their consent. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). The GTLA reaffirms this rule of immunity for local governmental entities and provides the exceptions under which a local government may be sued. *See* Tenn. Code Ann. § 29-20-201(a).

II.    PREMISES LIABILITY CLAIMS UNDER THE GTLA

Plaintiff's claim against the City of Dyersburg constitutes a premises liability claim. The GTLA "basically codifies the common law obligations of owners and occupiers of property embodied in premises liability law, which generally requires the exercise of ordinary care and diligence in maintaining the premises, including an affirmative duty to protect against dangers of which one knows or which, with reasonable care, might discover." *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002).

In premises liability cases, the plaintiff must establish:

(1) the governmental entity owns and controls the location or instrumentality alleged to have caused the injury; (2) a dangerous, defective, or, in the case of sidewalks, unsafe condition caused the injury; (3) the governmental entity had actual or constructive notice of the dangerous condition; and (4) the governmental entity breached its duty to eliminate the condition or its duty to warn of the condition.

*Butler v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2012-01863-COA-R3-CV, 2013 WL 3227570, at *2 (Tenn. Ct. App. June 21, 2013) (quoting *Benn v. Pub. Bldg. Auth. of Knox Cnty.*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932, at *2 (Tenn. Ct. App. June 28, 2010)).

In the context of injuries resulting from defects or obstructions that cause injuries to pedestrians using a street or sidewalk in the usual and customary manner, a municipality may be held liable if the injury is foreseeable. *Bragg v. Metro. Gov't of Nashville*, No. 01A01-9703-CV-00111, 1997 WL 803707, at *2 (Tenn. Ct. App. Dec. 30, 1997) (citing *City of Knoxville v. Baker*, 150 S.W.2d 224, 228 (Tenn. Ct. App. 1940)). "The obstruction or defect must be dangerous and the danger must be one that a reasonably prudent person would have anticipated as a natural and probable result of

allowing the obstruction or defect to exist." *Id*. (citations omitted). "A risk is foreseeable if a reasonable person could foresee the probability of its occurrence." *Id.* (citing *Doe v. Linder Construction Co., Inc*., 845 S.W.2d 173, 178 (Tenn. 1992)).

Plaintiff asserts that the City's design and subsequent maintenance of the steps constituted a dangerous or defective condition. She asserts that the City had knowledge of the dangerous or defective condition and that it failed to take corrective action. The trial court, however, found that Plaintiff failed to prove that a dangerous or defective condition existed or that the City had actual or constructive notice of any dangerous or defective condition.

"Actual notice is 'knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" *Lindgren*, 88 S.W.3d at 584 (quoting *Kirby v. Macon Co*., 892 S.W.2d 403, 409 (Tenn. 1994)). "Constructive notice is 'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'" *Id*. (quoting *Kirby*, 892 S.W.2d at 409). Whether the City had actual or constructive notice of a dangerous condition or defect is a question of fact. *James v. Metro. Gov't of Nashville & Davidson Cnty*., 404 S.W.2d 249, 252 (Tenn. Ct. App. 1966).

Plaintiff presented photographs showing that the City installed an additional handrail on the other side of the steps and made other changes to the steps after her fall. Based on the City's action, Plaintiff insists this proves the existence of the dangerous or defective condition. It does not.[3] Rule 407 of the Tennessee Rules of Evidence states, in pertinent part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove strict liability, negligence, or culpable conduct in connection with the event." Therefore, the City's subsequent corrective measures, standing alone, do not prove that a dangerous condition or defect existed prior to Plaintiff's fall.

Furthermore, Plaintiff provided no expert proof to support her contention that the design of the steps, the installation of a handrail on only one side of the steps, or the elevation of the metal strip on the edge of the steps constituted a dangerous or defective condition. Moreover, she provided no proof of any code violations or citations. We,

---

[3] While questioning Greg Williams, Plaintiff asked about the repairs that were made to the stairway after her fall. The trial court allowed her to proceed; however, the court correctly informed her that because the City admits ownership and control of the steps, any correction made after an event has occurred is inadmissible into evidence.

therefore, affirm the trial court's finding that Plaintiff failed to prove that a dangerous condition or defect existed.

Because Plaintiff failed to prove that a dangerous or defective condition existed, she cannot prove that the City had prior notice or sufficient time after it obtained actual or constructive notice of a dangerous condition or defect to take corrective action or to warn of the dangerous condition or defect. *See Butler*, 2013 WL 3227570, at *4 (citing *Trebing v. Fleming Companies, Inc.*, 40 S.W.3d 42 (Tenn. Ct. App. 2000); *Souter v. Cracker Barrel Old Country Store, Inc.*, 895 S.W.2d 681 (Tenn. Ct. App. 1994)); *Champlin v. Metro. Gov't of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at *5 (Tenn. Ct. App. Apr. 20, 2009).

For the foregoing reasons, we affirm the judgment of the trial court.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Marilyn Lynn James.

_____
FRANK G. CLEMENT JR., P.J., M.S.